David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MIRIAM MECHRI and SALMA MATHLOUTHI, individually and on behalf of all others similarly situated, | Case No.  5:18-cv-0379 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | |
| INTEL CORPORATION, a Delaware Corporation, | |
| Defendant. | |

1    Plaintiffs, by and through their undersigned attorneys, bring this proposed class action

2    and allege as follows:

3    **I.    INTRODUCTION**

4        1.   Plaintiffs bring this action against defendant Intel Corporation ("Intel" or

5    "Defendant") on behalf of all persons who purchased, whether separately or as a component

6    of another device, a defective Intel processor ("CPUs").

7        2.    Defendant Intel's x86-64x CPUs suffer from a security defect, which causes

8    the CPUs to be exposed to troubling security vulnerabilities by allowing potential access to

9    extremely secure kernel data (the "Defect"). The only way to "patch" this vulnerability

10   requires extensive changes to the root levels of the Operating System which will dramatically

11   reduce performance of the CPU. The Defect renders the Intel x86-64x CPUs unfit for their

12   intended use and purpose. The Defect exists in all Intel x86-64x CPUs manufactured since at

13   least 2008. The x86-64x CPU is, and was, utilized in the majority of all desktop, laptop

14   computers, and servers in the United States

15       3.    To date, Defendant has been unable or unwilling to repair the Defect or offer

16   Plaintiffs and class members a non-defective Intel CPU or reimbursement for the cost of such

17   CPU and the consequential damages arising from the purchase and use of such CPUs. Indeed,

18   there does not appear to be a true "fix" for the Defect. The security "patch," while expected to

19   cure the security vulnerabilities, will dramatically degrade the CPU's performance. Therefore,

20   the only "fix" would be to exchange the defective x86-64x processor with a device containing

21   a processor not subject to this security vulnerability. In essence, Intel x86-64x CPU owners

22   are left with the unappealing choice of either purchasing a new processor or computer

23   containing a CPU that does not contain the Defect, or continuing to use a computer with

24   massive security vulnerabilities or one with significant performance degradation.

25       4.    The CPUs Defendant manufactured and sold to Plaintiffs and Class members

26   were not merchantable and were not fit for the ordinary and particular purposes for which

27   such goods are used in that the CPUs suffer from a critical security defect, requiring an OS-

28   level software patch that will degrade the performance of the CPU.

1    5.    Having purchased a CPU that suffers from this Defect, Plaintiffs and class

2  members suffered injury in fact and a loss of money or property as a result of Defendant's

3  conduct in designing, manufacturing, distributing and selling defective CPUs. Intel has failed

4  to remedy this harm, and has earned and continues to earn substantial profit from selling

5  defective CPUs.

6                                   **THE PARTIES**

7    6.    On personal knowledge, Plaintiff Mariam Mechri is an individual residing in

8  the State of California. In 2016, Plaintiff Mechri purchased a computer with an Intel CPU

9  processor from Walmart. She was unaware of the CPU Defect described herein prior to her

10  purchase of this computer. Had Defendant disclosed such material facts Plaintiff Mechri

11  would not have purchased a computer with this CPU or paid the price she did.

12    7.    On personal knowledge, Plaintiff Salma Mathlouthi is an individual residing in

13  the State of California. On or about November 17, 2016, Plaintiff Mathlouthi purchased a Dell

14  laptop computer with an Intel CPU processor. She was unaware of the CPU Defect described

15  herein prior to her purchase of this computer.  Had Defendant disclosed such material facts,

16  Plaitniff Mathlouthi would not have purchased a computer with this CPU or paid the price she

17  did.

18    8.    Defendant Intel Corporation is a business incorporated under the laws of the

19  State of Delaware. Defendant's principal place of business is located at 2200 Mission College

20  Blvd., Santa Clara, California. At all relevant times, Defendant was engaged in the business of

21  designing, manufacturing, distributing and/or selling electronic computer products, including

22  the defective Intel CPUs at issue.

23    9.    Whenever this complaint refers to any act of Defendant, the reference shall

24  mean (1) the acts of the directors, officers, employees, affiliates, or agents of Defendant who

25  authorized such acts while actively engaged in the management, direction or control of the

26  affairs of Defendant, or at the direction of Defendant, and/or (2) any persons who are the

27  parents or alter egos of Defendant, while acting within the scope of their agency, affiliation,

28  or employment.

**JURISDICTION AND VENUE**

10.     The court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(d), the Class Action Fairness Act, because this suit is a class action, a member of the proposed class of plaintiffs is a citizen of a State different from Defendant, and the amount in controversy exceeds $5 million, excluding interest and costs.

11.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

**FACTUAL ALLEGATIONS**

12.     For at least 10 years, Defendant has marketed, distributed, and warranted these defective Intel CPUs in California and throughout the United States.

13.     On or about November 21, 2017, news stories revealed that a large number of Intel processors contain a serious design flaw that creates significant security vulnerabilities for any device that uses Intel processors. The security flaw is in Intel's x86-64 hardware which was first introduced in 2004 and is still in use in the majority of today's modern-day processors.

14.     The design defect is believed to exist in almost every Intel processor made since at least 2004 regardless of the operating system. Intel's x86-64x processors are the most widely-used chips in virtually all desktop and laptop computers. The Intel processors are also used in most of the large, cloud based servers such as those from Google, Microsoft and Amazon.

15.     On or about January 2, 2018, it was revealed that the "patch" to this security vulnerability would lead to substantial CPU performance degradation. The "patch" would require root level changes to the Operating System resulting in a substantial decrease in CPU performance as much as 30-50% by some estimates.

**A. The Intel CPU Defect**

1     16.     Intel's Intel CPUs have a Defect that is inherent within the CPU itself and/or

2     the result of software or hardware design or manufacturing flaws. Fixing the Defect using an

3     OS-level software patch causes the CPUs to slow down.

4     17.     As The Register reported on January 2, 2018:

5

6     A fundamental design flaw in Intel's processor chips has forced a significant redesign
      of the Linux and Windows kernels to defang the chip-level security bug.
7     Programmers are scrambling to overhaul the open-source Linux kernel's virtual
      memory system. Meanwhile, Microsoft is expected to publicly introduce the necessary
8     changes to its Windows operating system in an upcoming Patch Tuesday: these
      changes were seeded to beta testers running fast-ring Windows Insider builds in
9     November and December.

10    Crucially, these updates to both Linux and Windows will incur a performance hit on
      Intel products. The effects are still being benchmarked, however we're looking at a
11    ballpark figure of five to 30 per cent slow down, depending on the task and the
      processor model. More recent Intel chips have features – such as PCID – to reduce the
12    performance hit. [...]

13    Similar operating systems, such as Apple's 64-bit macOS, will also need to be updated
14    – the flaw is in the Intel x86-64 hardware, and it appears a microcode update can't
      address it. It has to be fixed in software at the OS level, or go buy a new processor
15    without the design blunder.

16    Details of the vulnerability within Intel's silicon are under wraps: an embargo on the
17    specifics is due to lift early this month, perhaps in time for Microsoft's Patch Tuesday
      next week. Indeed, patches for the Linux kernel are available for all to see but
18    comments in the source code have been redacted to obfuscate the issue.

19    See https://www.theregister.co.uk/2018/01/02/intel_cpu_design_flaw/ (last visited January 2,
      2018).

20    18.     Subsequent reporting by The Register found that Apple has already provided a

21    software patch for the defect

22

23    Finally, macOS has been patched to counter the chip design blunder since version

24    10.13.2, according to operating system kernel expert Alex Ionescu.

25    (Id.)

26    19.     The Defect's presence is material because fixing the Defect reduces the

27    performance of the CPUs thereby causing the CPUs to slow down from the performance

28

---

4

1  specifications that Defendant promised and that consumers expected when buying a computer

2  with an Intel CPU. The Defect is also material because of the security vulnerabilities Intel

3  based CPUs are exposed to.

4        20.    As The Register article further explains:

5  **Impact**

6  It is understood the bug is present in modern Intel processors produced in the past
decade. It allows normal user programs – from database applications to JavaScript in

7  web browsers – to discern to some extent the layout or contents of protected kernel
memory areas.

8

9  The fix is to separate the kernel's memory completely from user processes using
what's called Kernel Page Table Isolation, or KPTI. [...]

10

11  Whenever a running program needs to do anything useful – such as write to a file or
open a network connection – it has to temporarily hand control of the processor to the

12  kernel to carry out the job. To make the transition from user mode to kernel mode and
back to user mode as fast and efficient as possible, the kernel is present in all

13  processes' virtual memory address spaces, although it is invisible to these programs.
When the kernel is needed, the program makes a system call, the processor switches to

14  kernel mode and enters the kernel. When it is done, the CPU is told to switch back to
user mode, and reenter the process. While in user mode, the kernel's code and data

15  remains out of sight but present in the process's page tables. [...]

16

17  These KPTI patches move the kernel into a completely separate address space, so it's
not just invisible to a running process, it's not even there at all. Really, this shouldn't

18  be needed, but clearly there is a flaw in Intel's silicon that allows kernel access
protections to be bypassed in some way.

19

20  The downside to this separation is that it is relatively expensive, time wise, to keep
switching between two separate address spaces for every system call and for every

21  interrupt from the hardware. These context switches do not happen instantly, and they
force the processor to dump cached data and reload information from memory. This

22  increases the kernel's overhead, and slows down the computer.

23  ***Your Intel-powered machine will run slower as a result.***

24  (*Id.* (emphases added).)

25        21.    In an effort to run as quickly as possible, Intel processors run something called

26  "speculative execution." In essence, the processor attempts to guess what operation is going to

27  be run next so that code can be standing by, ready to execute. When the processor selects

28

1    what it believes is the next operation, it will fetch the code(s) needed to carry out that

2    operation and have the code(s) on standby. However, Intel's "speculative execute" code may

3    "fetch" secure codes without first performing a security check which would block such a

4    request. So an innocuous program such as Javascript might be exploited to gain access to

5    extremely secure kernel data. Or as the The Register writes, "[t]hat would allow ring-3-level

6    user code to read ring-0-level kernel data. And that is not good." (*Id.*)

7        22.    The Defect is material because neither Plaintiffs, Class members, nor any

8    reasonable consumer would have purchased the defective Intel CPUs at the prices that they

9    did had they known or had they been told by Intel or its retail agents about the Defect prior to

10   purchase.

11       23.    The Defect is unprecedented in scope in that it exposes millions and millions

12   of Intel-based computers to critical security vulnerabilities and hacking and the "patch" to

13   cure these security vulnerabilities will result in substantial performance degradation.

14   **B. Intel Admits the Defect Exists and Fails to Provide a Remedy**

15       24.    Intel is aware that its CPUs suffer from the Defect that exposes the CPUs to

16   critical security vulnerabilities and that proposed OS-level software patches will slow the

17   performance of these CPU chips.

18       25.    On January 3, 2018, Intel issued a press release in response to the myriad news

19   media reports concerning the Defect, stating:

20

21       Intel and other technology companies have been made aware of new security research
         describing software analysis methods that, when used for malicious purposes, have the

22       potential to improperly gather sensitive data from computing devices that are
         operating as designed.

23       . . .

24       Check with your operating system vendor or system manufacturer and apply any
         available updates as soon as they are available. Following good security practices that

25       protect against malware in general will also help protect against possible exploitation
         until updates can be applied.

26   https://www.theregister.co.uk/2018/01/04/intel_meltdown_spectre_bugs_the_registers_annota

27   tions/ (last visited January 10, 2018)

28

26.    Defendant's press release acknowledges the existence of the Defect, claims other vendors (competitors) products also suffer from this Defect, and downplays the performance impact which it claims "will be mitigated over time."

26.    Intel has failed to cure the Defect or replace Plaintiffs' Intel CPUs with non-defective CPUs and offer full compensation required under federal and state law.

27.    Any fix would require extensive changes at the root levels of the OS software, which would assuredly impact the performance of Intel processor-based machines. More importantly, any "fix" would not only directly impact the performance of a particular user's Intel-based device, but have indirect performance impacts. Countless servers that run internet-connected services in the cloud will see a dramatic degradation in performance, which will have a downstream impact to all users of these servers. Thus, cloud-based services like Microsoft, Google, and Amazon will see performance degradation.

## VII.    CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this class action claim pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23 are met with respect to the class defined below.

29.    Plaintiff brings her claims on her own behalf, and on behalf of the following class (the "Class"):

All persons who, in California and such other states the Court determines to be appropriate, purchased one or more Intel CPUs from Intel and/or its authorized retailer sellers and experienced the Defect or are likely to experience the Defect during the useful life of the CPU. Excluded from the Class are Defendant, its officers and directors at all relevant times, members of immediate families and their legal representatives, heirs, successors, or assigns and any entity in which the Defendant had a controlling interest.

30.    Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class certification and/or the result of discovery. This lawsuit is properly brought as a class action for the following reasons.

31.    The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class includes thousands of persons geographically dispersed throughout the United States. The precise number and identities of Class members

are unknown to Plaintiffs, but are known to Defendant or can be ascertained through discovery, using records of sales, warranty records, and other information kept by Defendant or its agents.

32.     Plaintiffs do not anticipate any difficulties in the management of this action as a class action. The Class is ascertainable, and there is a well-defined community of interest in the questions of law and/or fact alleged herein since the rights of each Class member were infringed or violated in similar fashion based upon Defendant's uniform misconduct. Notice can be provided through sales and warranty records and publication.

33.     Questions of law or fact common to the Class exist as to Plaintiffs and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. Among these predominant common questions of law and/or fact are the following:

    a.  Whether Defendant's CPUs possess the Defect and the nature of that Defect;

    b.  Whether Defendant made any implied warranties in connection with the sale of the defective CPUs;

    c.  Whether Defendant breached any implied warranties relating to its sale of defective CPUs by failing to resolve the Defect in the manner required by law;

    d.  Whether Defendant was unjustly enriched by selling defective Intel CPUs;

    e.  Whether Defendant violated applicable consumer protection laws by selling CPUs with the Defect and/or by failing to disclose the Defect, and failing to provide the relief required by law; and

    f.  The appropriate nature and measure of Class-wide relief.

34.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs and the Class. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

35.     Plaintiffs' claims are typical of the claims of Class members. The injuries sustained by Plaintiffs and the Class flow, in each instance, from a common nucleus of operative facts based on the Defendant's uniform conduct as set forth above. The defenses, if any, that will be asserted against Plaintiffs' claims likely will be similar to the defenses that will be asserted, if any, against Class members' claims.

36.     Plaintiffs will fairly and adequately protect the interests of Class members.

37.     Plaintiffs have no interests materially adverse to or that irreconcilably conflict with the interests of Class members and have retained counsel with significant experience in handling class actions and other complex litigation, and who will vigorously prosecute this action.

38.     A class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy, and individual joinder of all Class members is impracticable, if not impossible because a large number of Class members are located throughout the United States. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the courts, protects the rights of each Class member and maximizes recovery to them.

39.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

**COUNT I -- Breach of Implied Warranty**

40.     Plaintiffs hereby incorporate all the above allegations by reference as if fully set forth herein. Plaintiffs assert this count individually and on behalf of the proposed Class.

41.     Defendant and its authorized agents and resellers sold Intel CPUs to Plaintiffs and Class members in the regular course of business.

42.     Defendant impliedly warranted to members of the general public, including Plaintiffs and Class members, these CPUs were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it is made, of average worth in the marketplace, or not broken, unworkable, damaged, contaminated or flawed), was of the same quality as those generally acceptable in the trade or that would pass without objection in

9

the trade, were free from material defects and were reasonably fit for the ordinary purposes for which they were intended or used. In addition, Defendant either was or should have been aware of the particular purposes for which such CPUs are used, and that Plaintiffs and the Class members were relying on the skill and judgment of Defendant to furnish suitable goods for such purpose.

43.     Pursuant to agreements between Defendant and its authorized agents and re-sellers, the stores Plaintiffs and Class members purchased their defective Intel CPUs from are authorized retailers and authorized CPU service facilities. Plaintiffs and Class members are third-party beneficiaries of, and substantially benefited from, such contracts.

44.     Defendant breached its implied warranties by selling Plaintiffs and Class members defective Intel CPUs. The Defect renders the Intel CPUs unmerchantable and unfit for their ordinary or particular use or purpose. Defendant has refused to recall, repair or replace, free of charge, all Intel CPUs or any of their defective component parts or refund the prices paid for such CPUs.

45.     The Defect in the Intel CPUs existed when the CPUs left Defendant's and their authorized agents' and retail sellers' possession and thus is inherent in such CPUs.

46. As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiffs and Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale in terms of the difference between the value of the CPUs as warranted and the value of the CPUs as delivered. Additionally, Plaintiffs and Class members either have or will incur economic, incidental and consequential damages in the cost of repair or replacement and costs of complying with continued contractual obligations as well as the cost of buying an additional CPU they would not have purchased had the CPUs in question not contained the non-repairable Defect.

46.     Plaintiffs and Class members are entitled to legal and equitable relief against Defendant, including damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

1    **COUNT II -- Song-Beverly Warranty Act, California Civil Code § 1792, et seq.**

2       47.     Plaintiffs incorporate all of the above allegations by reference as if fully set

3    forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

4       48.     Under the Song-Beverly Consumer Warranty Act, California Civil Code

5    § 1792, et seq., every sale of consumer goods in the State of California is accompanied by

6    both a manufacturer's and retail seller's implied warranty that the goods are merchantable and

7    an implied warranty of fitness.

8       49.     Plaintiffs and the Class members who bought at retail in California each

9    purchased one or more Intel CPUs, which are "consumer goods" within the meaning of

10   California Civil Code § 1791.

11      50.     Defendant is in the business of manufacturing and selling Intel CPUs to retail

12   buyers, and therefore is a "manufacturer" and "seller" within the meaning of California Civil

13   Code § 1791.

14      51.     Defendant impliedly warranted to Plaintiffs and Class members that the Intel

15   CPUs were merchantable and fit for the ordinary and particular purposes for which the CPUs

16   are required and used.

17      52.     Defendant has breached implied warranties because the Intel CPUs sold to

18   Plaintiffs and Class members were not merchantable and were not fit for the ordinary and

19   particular purposes for which such goods are used in that the CPUs suffer from a critical

20   security defect, requiring an OS-level software patch that will degrade the performance of the

21   CPU. It is not necessary for Plaintiffs to prove the cause of the Defect in the CPUs, but only

22   that the CPUs did not conform to the applicable warranties.

23      53.     As a direct and proximate cause of Intel's breach of the Song-Beverly Act,

24   Plaintiffs and Class members sustained damages and other losses in an amount to be

25   determined at trial, entitling them to compensatory damages, consequential damages, statutory

26   damages and civil penalties, diminution in value, costs, attorneys' fees and interest, as

27   applicable.

28   **COUNT III -- Consumers Legal Remedies Act, California Civil Code § 1750 et seq.**

11

54.     Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein, except those allegations seeking a damages award.

55.     Plaintiffs assert this claim individually and on behalf of all Class members under California Civil Code §1781.

56.     The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendant's acts and practices because it covers transactions involving the sale of goods to consumers.

57.     The Intel CPUs are "goods" under California Civil Code §1761(a).

58.     Intel is a "person" under California Civil Code §1761(c).

59.     Plaintiffs and the Class members are "consumers" under California Civil Code §1761(d).

60.     Plaintiffs and Class members engaged in "transactions" under California Civil Code §1761(e), including the purchase of Intel CPUs and the presentation of Intel CPUs for repair or replacement of the Defect.

61.     Intel's unfair and deceptive business practices were intended and did result in the sale of Intel CPUs, a defective consumer product.

62.     Defendant's Intel CPUs failed to perform in accordance with their expected characteristics, uses and benefits.

63.     Defendant had exclusive knowledge of material facts, i.e. the Intel CPUs were defective, unknown to Plaintiffs and Class members. If Plaintiffs and Class members had known of the Defect in the Intel CPU, they would not have purchased the CPUs at the prices they did, if at all.

64.     Defendant had a duty to disclose the Defect in the Intel Galaxy S for various reasons, including:

a.   Intel had exclusive knowledge of the Defect and other material facts not known to Plaintiffs or the Class; and

b.   Intel actively concealed a material fact from Plaintiffs and the Class.

65.     Defendant engaged in unfair and deceptive practices by misrepresenting or not

12

1  disclosing the above material facts from Plaintiffs and the Class, in violation of Cal. Civ.

2  Code §1770(a)(5), (7), (14) and (16).

3      66.      As a direct and proximate result of Defendant's conduct, Plaintiffs and the

4  Class members suffered injury. Plaintiffs and Class members are entitled to injunctive relief,

5  court costs and attorney fees, and other relief the Court deems proper.

6  68. At this time, Plaintiffs only seek injunctive relief and do not seek an award of

7  damages under the CLRA.

8              **COUNT IV -- Violation of the California Unfair Competition Law**

9      67.      Plaintiffs incorporate all of the above allegations by reference as if fully set

10  forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

11     68.      Defendant's business acts and practices complained of were centered in,

12  carried out, effectuated and perfected within or had their effect in the State of California, and

13  injured Plaintiffs and all Class members.

14     69.      Beginning as early as 2008, and continuing thereafter at least up through and

15  including the date of filing this Complaint, Defendant committed acts of unfair competition,

16  as defined by §17200, et seq., of the California Business and Professions Code, by engaging

17  in the acts and practices specified above.

18     70.      This claim is brought pursuant to §§17203 and 17204 of the California

19  Business and Professions Code to obtain equitable monetary and injunctive relief from

20  Defendant for acts and practices as alleged herein that violated §17200 of the California

21  Business and Professions Code, commonly known as the Unfair Competition Law.

22     71.      Defendant's conduct as alleged herein violated §17200. The acts, omissions,

23  practices and non-disclosures of Defendant constituted a common continuous course of

24  conduct of unfair competition by means of the commission of unfair and unlawful business

25  acts or practices within the meaning of California Business and Professions Code, §17200, et

26  *seq.*

27     72.      Defendant engaged in "unlawful" business acts and practices by:

28          a.   violating the Song-Beverly Consumer Warranty Act, California Civil

Code §1792, et seq.;

      b.  breaching implied warranties; and

      c.  violating the Consumers Legal Remedies Act, California Civil Code §1750, et seq.

72.     Defendant engaged in "unfair" business acts and practices by, among other things:

      a.  engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the Class considering the reasonably available alternatives, based on legislatively declared policies not to sell defective products in the market without providing an adequate remedy therefor;

      b.  engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the Class; and

      c.  engaging in unfair business practices by refusing to repair or recall the defective Intel CPUs or providing compensation therefor.

73.     Specifically, Defendant engaged in "unfair" business acts and practices by selling the Intel CPUs knowing or being aware the CPUs contained a critical security Defect, where the OS-level software patch would degrade the processors performance. Defendant also engaged in unfair business acts and practices by making express and implied warranties, which it refuses to honor.

74.     As such conduct is or may well be continuing and on-going, Plaintiffs and each of the Class members are entitled to injunctive relief to prohibit or correct such on-going acts of unfair competition, in addition to obtaining equitable monetary relief.

75.     Plaintiffs and Class members used Defendant's products and had business dealings with Defendant either directly or indirectly as described above. The acts and practices of Defendant have caused Plaintiffs and Class members to lose money and property by being overcharged for and paying for the defective CPUs at issue, or being required to purchase an additional working CPU. Such loss was the result of the above acts of unfair competition and Defendant's misconduct in violation of the state laws set forth above. Plaintiffs are therefore entitled to seek recovery of such amounts. Such injury occurred at the time such monies were paid. Plaintiffs have thus each suffered injury in fact and lost money or property as a result of such acts and practices as set forth in detail above.

76.     Defendant has unjustly benefited as a result of its wrongful conduct and its acts of unfair competition. Plaintiffs and Class members are accordingly entitled to equitable

relief including restitution and/or restitutionary disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant as a result of such business acts and practices, pursuant to California Business and Professions Code §§17203 and 17204, as well as attorneys' fees and costs pursuant to, among others, California Code of Civil Procedure §1021.5.

<b>COUNT V -- Common Counts – Assumpsit, Restitution,<br>Unjust Enrichment and/or Quasi-Contract</b>

77.     Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

78.     This cause of action is alleged as an alternative to the warranty claims as permitted under Rule 8(d)(2) of the Federal Rules of Civil Procedure.

79.     As Plaintiffs and the Class show just grounds for recovering money paid for benefits Defendant received from them, either directly or indirectly, and they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law based on principles of restitution and unjust enrichment, or though quasi-contract.

80.     Defendant, having received such benefits, is required to make restitution. The circumstances here are such that, as between the two, it is unjust for Defendant to retain such benefit based on the conduct described above. Such money or property belongs in good conscience to the Plaintiffs and Class members and can be traced to funds or property in Defendant's possession. Plaintiffs and Class members have unjustly enriched Defendant through payments and the resulting profits enjoyed by Defendant as a direct result of such payments. Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the conduct challenged in this Complaint.

81.     By virtue of the purchase and sale of the CPUs in question, Defendant alternatively entered into a series of implied-at-law or quasi-contracts that resulted in money being had and received by Defendant, either directly or indirectly, at the expense of Plaintiffs and Class members under agreements in assumpsit. Plaintiffs and other Class members conferred a benefit upon Defendant by purchasing one of the defective CPUs. Defendant had knowledge of the general receipt of such benefits, which Defendant received, accepted and retained. Defendant owes Plaintiffs and Class members these sums that can be obtained either directly from Class members, Defendant or its authorized retailers.

82.     Under principles of restitution, an entity that has been unjustly enriched at the expense of another by the retention of benefit wrongfully obtained is required to make restitution to the other. In addition, under common law principles recognized in claims of common counts, assumpsit, unjust enrichment, restitution, and quasi-contract, under the circumstances alleged herein it would be inequitable for Defendant to retain such benefits without paying restitution or restitutionary damages. Such principles require Defendant to return such benefits when the retention of such benefits would unjustly enrich Defendant. They should not be permitted to retain the benefits conferred by Plaintiffs and Class members via payments for the defective CPUs. Other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

83.     Plaintiffs and Class members seek appropriate monetary relief for such claims. In addition, pursuant to California Civil Code § 2224, "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Based on the facts and circumstances alleged above, in order to prevent unjust enrichment and to prevent Defendant from taking advantage of its own wrongdoing, Plaintiffs and the Class are further entitled to the establishment of a constructive trust, in a sum certain, of all monies charged and collected or retained by Defendant from which Plaintiffs and Class members may seek restitution.

## COUNT VI -- Strict Liability

84.     Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

85.     Plaintiffs and the Class were harmed by CPUs Defendant manufactured, which were contained in, but also separate and apart from, the computers they purchased.

86.     Defendant's CPUs contained a manufacturing defect, or were defectively designed for the reasons set forth above.

87.     Plaintiffs and Class members have been harmed, as they now own a computer with a CPU that due to such manufacturing or design defect is subject to invasion of a supposedly core protected part of the CPU and decreased performance, in an amount according to proof at trial.

## COUNT VII -- Negligence

88.     Plaintiffs incorporate all of the above allegations by reference as if fully set

CLASS ACTION COMPLAINT

forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

89.     Defendant was negligent in the manufacture and design of the CPUs containing the Defect, which CPUs were contained in, but also separate and apart from, the computers Plaintiffs and Class members purchased.

90.     Defendant's negligence was a substantial factor and reasonably foreseeable in causing harm to Plaintiffs and Class members.

91.     Plaintiffs and Class members have been harmed, as they now own a computer with a CPU that due to such manufacturing or design defect is subject to invasion of a supposedly core protected part of the CPU and decreased performance, in an amount according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and all Class members pray for judgment as follows:

a. Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Awarding Plaintiffs and Class members all proper measures of equitable monetary relief and damages (damages excluded at this time for violations of the CLRA), plus interest to which they are entitled;

c. Awarding equitable, injunctive, and declaratory relief as the Court may deem just and proper, including restitution and restitutionary disgorgement;

d. Awarding Plaintiffs' reasonable costs and attorney's fees; and

e. Granting such further and other relief this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues

1    DATED:  January 17, 2018

2

3    **OF COUNSEL**
     **MONTEVERDE & ASSOCIATES PC**

4    Juan E. Monteverde
     The Empire State Building

5    350 Fifth Avenue, Suite 4405
     New York, New York 10118

6    Tel:  212-971-1341

7    Fax:  212-202-7880
     Email: jmonteverde@monteverdelaw.com

8

9    **ADEMI & O'REILLY, LLP**
     Shpetim Ademi

10   Robert K. O'Reilly
     Mark A. Eldridge

11   Jesse Fruchter
     3620 East Layton Avenue

12   Cudahy, Wisconsin 53110

13   Tel: 414-482-8000
     Fax: 414-482-8001

14   E-mail: sademi@ademilaw.com
     roreilly@ademilaw.com

15   meldridge@ademilaw.com
     jfruchter@ademilaw.com

16

17   *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
*/s/ David E. Bower*
       David E. Bower

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT